**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Acushnet Company, a Delaware corporation,<br><br>             Plaintiff,<br><br>v.<br><br>Thomas Allan Thiede a/k/a Thomas Thiede a/k/a Tom Thiede a/k/a Tom T., an individual, d/b/a Showcase Studios d/b/a Showcase Companies d/b/a Showcase Architectural Products d/b/a Showcase Custom Homes, Inc. d/b/a Makeovermygaragedoor.com and Does 1-10,<br><br>             Defendants. | No. CV 12-02508-PHX-JAT<br><br>**ORDER GRANTING PLAINTIFF'S EMERGENCY *EX PARTE* APPLICATION FOR:**<br>**(1) TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER;**<br>**(2) ORDER RESTRAINING THE TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION; (3) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ENTER; (4) SUBSTITUTE CUSTODIAN ORDER; AND**<br>**(5) EXPEDITED DISCOVERY**<br><br>**[Filed Under Seal]** |

Pending before the Court is Plaintiff's Emergency *Ex Parte* Application for: (1) temporary restraining order and seizure order; (2) order to show cause why a preliminary injunction should not issue; (3) order restraining assets tied to the counterfeiting operation; (4) substitute custodian order; and (5) order for expedited discovery. (Doc. 5).

I. BACKGROUND

A. Plaintiff Acushnet Company ("Acushnet") is the owner of all rights in and to the following trademarks protected by the following United States Federal Trademark Registrations:

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| [crown logo] | 2,620,432 | September 17, 2002 | IC 28- Golf clubs and accessories, namely golf tees, golf gloves, golf bags, golf putters, golf drivers, golf woods, golf irons, golf green repair tools, golf club covers, and golf bag covers. |
| SCOTTY CAMERON | 2,525,024 | January 1, 2002 | IC 28 – Golf clubs and accessories thereof |
| TITLEIST | 934,406 | May 23, 1972 | IC 28- Golf equipment comprising golf balls, golf clubs, golf bags, golf gloves and golf covers |
| *Titleist* | 1,155,766 | May 26, 1981 | IC 28- Golf Equipment-Namely, Golf Balls, Golf Clubs and Golf Bags. |
| [circle T logo] | 3,376,961 | February 5, 2008 | IC 24 – Golf towels<br><br>IC 25 – Clothing, namely, jackets, shirts, hats and visors<br><br>IC 28 – Golf equipment, namely, golf putters, golf club head covers, golf club grips and divot tools |
| TOUR RAT | 4,189,312 | August 14, 2012 | IC 28 – Golf balls; golf putter covers |

These trademarks are registered in International Class 28 and are used in connection with the manufacture and distribution of, among other things, high quality golf club headcovers. Additionally, Acushnet is the owner of all common law rights in and to the JUNKYARD DOG and SCOTTY'S CUSTOM SHOP marks as associated with

2

1  clothing, including shirts and golf club headcovers (the above-identified common law
2  and registered marks shall collectively be referred to herein as the "Acushnet Marks").
3       B.   Plaintiff sells and otherwise distributes its respective products, including
4  golf club headcovers and clothing products, including shirts, in the United States.
5       C.   Defendant is Thomas Allan Thiede a/k/a Thomas Thiede a/k/a Tom
6  Thiede a/k/a Tom T., an individual, d/b/a Showcase Studios d/b/a Showcase Companies
7  d/b/a Showcase Architectural Products d/b/a Showcase Custom Homes, Inc. d/b/a
8  Makeovermygaragedoor.com.
9       D.   Plaintiff has proffered sufficient evidence to show that Defendant has
10 manufactured, advertised, promoted, offered for sale, and/or distributed, golf club
11 headcovers and clothing products, including shirts, using labeling with counterfeits,
12 reproductions, and/or colorable imitations of the Acushnet Marks.
13      E.   Defendant is not now, nor has he ever been, authorized or licensed to use,
14 reproduce, or make counterfeits, reproductions, and/or colorable imitations of the
15 Acushnet Marks, or to distribute or sell golf club headcovers and/or clothing products,
16 including shirts, bearing counterfeit or infringing versions of the Acushnet Marks.

## II.   ANALYSIS

Pursuant to the Lanham Act (15 U.S.C. § 1051 *et seq*.) as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473, and Federal Rule of Civil Procedure 65, this Court is authorized to grant Plaintiff's motion (Doc. 5). In considering 15 U.S.C. § 1116(d)(4)(B) and the factors the Ninth Circuit has established for granting preliminary relief, *see Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009), the Court finds:

   A.   Plaintiff is likely to succeed on the merits and has a very strong probability of proving at trial that consumers are likely to be confused by Defendant's manufacturing, advertisement, promotion, sale, offer for sale, and/or distribution of golf club headcovers and clothing products, including shirts, bearing counterfeits, reproductions, and/or colorable imitations of the Acushnet Marks. (Doc. 5 at 16-23).

1      B. Plaintiff is likely to suffer an immediate and irreparable injury if a temporary restraining order and preliminary relief is not granted. It clearly appears from the following specific facts, as set forth in Plaintiff's Verified Complaint (Doc. 6) and the sworn Declarations on file (Doc. 5 at 32-146), and explained in Plaintiff's motion (Doc. 5 at 23-25), that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendant can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted: (1) Defendant has offered for sale golf club headcovers and clothing products, including shirts, bearing counterfeit and infringing trademarks in violation of Plaintiff's rights; (2) Plaintiff has well-founded fears that more counterfeit and infringing products bearing its trademarks will appear in the marketplace; that consumers may be misled, confused, and disappointed by the quality of these products, resulting in the consequent injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for its genuine products; (3) Plaintiff has well-founded fears that if it proceeds on notice to Defendant on this Application, Defendant will secret, conceal, destroy, sell off, or otherwise dispose of his counterfeit and infringing goods, software and equipment used to manufacture the counterfeit and infringing goods, packaging, and records relating thereto in his possession and/or inform his suppliers and others of Plaintiff's claims with the result that those suppliers and others may also secret, conceal, sell off, or otherwise dispose of counterfeit or infringing goods, equipment used to manufacture the counterfeit and infringing goods, packaging, and records relating thereto in their possession and control.

C. The balance of potential harm to Defendant if a temporary restraining order, seizure order, and substitute custodian order are issued is far outweighed by the potential harm to Plaintiff if they are not issued.

D. The public interest favors issuance of the temporary restraining order and seizure order.

1  E. If Defendant is given notice of the application for a temporary restraining order and seizure order, he is likely to destroy, move, hide, or otherwise make inaccessible to Plaintiff and the Court the matter to be seized.

F. The counterfeit and infringing goods, software and equipment used to manufacture the goods at issue, and business records related to the counterfeit goods to be seized will likely be found at:

> Thomas Allan Thiede a/k/a Thomas Thiede
> a/k/a Tom Thiede a/k/a Tom T., an individual,
> d/b/a Showcase Studios d/b/a Showcase Companies
> d/b/a Showcase Architectural Products d/b/a Showcase Custom Homes, Inc. d/b/a Makeovermygaragedoor.com
> 9550 East Thunderbird Road, #224
> Scottsdale, Arizona 85260

G. Plaintiff has given notice of its Application for an *ex parte* seizure order to the United States Attorney for this Judicial District pursuant to 15 U.S.C. § 1116(d)(2).

H. Plaintiff has not publicized the requested seizure in any way.

I. For all of the foregoing reasons, the Court finds an order other than an *ex parte* seizure order is not adequate to achieve the purposes of 15 U.S.C. § 1114.

## III. TEMPORARY RESTRAINING ORDER

Plaintiff's application for an *ex parte* temporary restraining order is granted as follows:

Defendant, his respective officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of them are hereby temporarily restrained:

A. From manufacturing, advertising, promoting, offering to sell, selling, distributing, or transferring any products, product packaging, software, embroidery patterns, or labeling bearing the Acushnet Marks identified in section IA above, or any confusingly similar marks, other than those actually manufactured and distributed by Plaintiff;

5

B.     From communicating, directly or indirectly, with any person or persons (a) from whom Defendant purchased or obtained products, materials, software or embroidery patterns used to counterfeit and infringe the Acushnet Marks identified in section I(A) above; or (b) to whom Defendant sold or offered to sell his finished products; or (c) whom Defendant knows or reasonably believes to possess, control, or have access to any such products, materials, software or embroidery patterns;

C.     From otherwise communicating, directly or indirectly, with any person(s) about this action, or Plaintiff's Application for this Order, except for Defendant's attorneys;

D.     From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (a) any products or product packaging not manufactured or distributed by Plaintiff bearing the Acushnet Marks, or any confusingly similar marks; or (b) any documentary or electronic records or similar evidence, software, embroidery patterns and/or equipment relating to the manufacture, sale, offer for sale, distribution, or transfer of any patterns, products or product packaging bearing any of the Acushnet Marks or colorable imitations thereof;

E.     From knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in paragraphs A through D of this section.

**IV.     SEIZURE ORDER AND SUBSTITUTE CUSTODIAN ORDER**

Plaintiff's application for an *ex parte* seizure order and substitute custodian order is granted as follows:

A.     Pursuant to 15 U.S.C. § 1116(d)(9), the United States Marshal or other Federal or law enforcement official (such as officers or agents of the United States Customs Service, Secret Service, Federal Bureau of Investigation, or United States Post Office) or a State or local law enforcement officer (on or off duty), shall carry out the seizure as provided herein, and Defendant shall surrender for seizure (1) all products, packaging, software, and embroidery patterns bearing the Acushnet Marks, or any other

mark substantially indistinguishable from either of those marks; together with (2) all documents, things, and records of any kind relating to the purchase, acquisition, manufacture, insurance of, advertising, promotion, sale, offering for sale, distribution, and transfer of such products and packaging, including, but not limited to, computer disks, CD ROMs, computer hardware, and other magnetically or electronically stored information; and all manufacturing, embroidery or packaging equipment, molds, logos, emblems, patches, matrices, computers, computer software, and any other means of making the same, including, but not limited to, machinery designed for the purpose of making, embroidering or packaging products sold under the Acushnet Marks or any parts of the foregoing. The law enforcement officers executing this Seizure Order may look for the documents and things to be seized and may appoint any other persons, including Plaintiff's counsel, investigators, and Plaintiff's representative(s), to assist in the execution of this Seizure Order.

     B.     The seizure shall be carried out at the location referred to in section II(F) above and any unknown locations operated by the Defendant, including any warehouses, storage facilities, and offices where the Defendant, including the Doe Defendants, are warehousing, holding, or storing any items or documents subject to surrender and seizure under the terms of this Order. This does not include, however, any other residences not referred to in section II(F) above.

     C.     Any materials seized by the law enforcement officials executing this Seizure Order shall be delivered up into the custody of the following temporary custodians appointed by the Court (Plaintiff's counsel, Stephen M. Gaffigan, P.A., 401 East Las Olas Blvd., Suite 130-453, Ft. Lauderdale, Florida 33301, and Osborn Maledon, P.A., 2929 North Central Avenue, Suite 2100, Phoenix, Arizona 85012-2794) pending the hearing provided for herein, pursuant to 15 U.S.C. §1116(d)(10). However, Plaintiff shall be allowed to examine samples of the seized products for authenticity at its facility in Massachusetts, and shall return to Defendant or his counsel, all genuine products seized, if any.

7

1     D.     The seizure shall take place no later than seven (7) days after the issuance
2  of this Order, pursuant to 15 U.S.C. § 1116(d)(5)(C).
3     E.     Pursuant to 15 U.S.C. § 1116(d)(5)(D), Plaintiff shall post a bond in the
4  amount of $10,000.00 as payment of damages to which Defendant may be entitled for a
5  wrongful seizure or wrongful attempted seizure, prior to conducting the seizure ordered
6  herein.
7     F.     A seizure confirmation hearing pursuant to 15 U.S.C. § 1116(d)(10)(A)
8  shall take place on Wednesday December 19, 2012, at 1:30 p.m. MST unless Plaintiff
9  shows good cause for another date or unless Defendant consents to another date.
10    G.     Plaintiff and/or its designees shall be permitted to videotape and take
11 photographs and notes of the seizure.
12    H.     The U.S. Marshals, or any other law enforcement officer, is authorized to
13 use reasonable force necessary to effect the seizure ordered (including breaking open
14 entrances to buildings and rooms therein) and to inspect the contents of any rooms,
15 warehouses, closets, safes, cabinets, furniture, containers, and desks at or within the
16 above-identified location within this Judicial District.
17    I.     Plaintiff shall hold harmless and indemnify the United States Marshal's
18 Office and other law enforcement agencies and their employees from any and all claims
19 asserted in any court or tribunal, arising from any acts, incidents, or occurrences in
20 connection with the seizure and possession of the Defendant's property, including any
21 third party claims.
22    J.     Only the items listed in this Order shall be seized and impounded, and
23 due care shall be taken by the United States Marshal or other law enforcement officers
24 and their appointed assistants to preserve and keep in good order Defendant's property
25 and assets which are not related to the manufacture, packaging, or distribution of the
26 alleged counterfeit and infringing products referred to above.
27    K.     At the time of the seizure all items shall be appropriately marked for
28 identification, and Defendant shall be given a receipt and/or inventory list thereof.  In

8

1  addition, the United States Marshal or other law enforcement officer shall file an
2  inventory list with the Court within forty-eight (48) hours after the seizure has been
3  carried out.

4      L.    Pursuant to 15 U.S.C. § 1116(d)(8), this Order, together with the
5  supporting documents, shall be sealed until Defendant has an opportunity to contest this
6  Order, except that Defendant shall have access to this Order and supporting documents
7  after the seizure has been carried out.

8  **V.    ORDER RESTRAINING THE TRANSFER OF ASSETS**

9      In order to preserve the status quo and under the authority granted to this Court
10 by 15 U.S.C. § 1117 to freeze the assets of a defendant under the Lanham Act, *see*
11 *Reebok Int'l Ltd. v. Marnatech Enters. Inc*., 737 F.Supp. 1521, 1526 (S.D. Cal. 1989);
12 *see also Reebok Int'l Ltd. v. Marnatech Enters. Inc*., 970 F.2d 552, 558-561 (9th Cir.
13 1992) (affirming district court's authority to freeze assets granted by the Lanham Act),
14 Plaintiff's application for an *ex parte* order restraining the transfer of assets is granted
15 as follows:

16     A.    Prior to having Defendant's assets frozen, Plaintiff shall serve this Order
17 on Paypal, Inc. ("Paypal") and any related companies and affiliates as described in
18 paragraph D of this section.

19     B.    Upon service of this Order by Plaintiff, Paypal and any related companies
20 and affiliates, shall immediately restrain and limit all accounts controlled and/or used
21 by the Defendant and/or his aliases identified in section I(C) above and/or in the name
22 of Showcase Studios, Showcase Companies, Showcase Architectural Products,
23 Showcase Custom Homes, Inc., Makeovermygaragedoor.com and/or
24 showcasecompanies@cox.net.

25     C.    Paypal shall further, within five (5) days of receiving this Order, provide
26 Plaintiff's counsel with all data which identifies the accounts frozen as well as an
27 accounting of the funds in the restrained accounts.  Such restraint of the accounts and
28 the disclosure of the related financial institution account information shall be made

9

1  without prior notice to the account owners or the financial institutions until further
2  order of this Court.

3       D.    Any financial institutions, and any related companies and affiliates,
4  including those identified by Paypal in connection with paragraphs B and C in this
5  section, (the "Financial Institutions"), which hold funds on behalf of or derived from
6  the Defendant's business, upon receipt of notice of this Order, shall immediately
7  restrain and limit all accounts controlled and/or used by the Defendant and/or his aliases
8  identified in section I(C) above and/or in the name of Showcase Studios, Showcase
9  Companies, Showcase Architectural Products, Showcase Custom Homes, Inc.,
10 Makeovermygaragedoor.com and showcasecompanies@cox.net.

11      E.    The Financial Institutions shall further, within five (5) days of receiving
12 this Order, provide Plaintiff's counsel with all data which identifies the accounts
13 restrained as well as an accounting of the funds in the restrained accounts. Such
14 restraint of the accounts and the disclosure of the related financial institution account
15 information shall be made without prior notice to the account owners or the financial
16 institutions until further order of this Court.

17      F.    Within five (5) days of serving Paypal and any other Financial Institutions
18 under paragraph D of this section, but no later than Friday December 14, 2012, Plaintiff
19 shall give notice to the Court identifying all accounts affected by this section and the
20 amount(s) of assets restrained and limited in those accounts.

21 **VI.    EXPEDITED DISCOVERY ORDER**

22      Plaintiff is authorized to immediately propound requests for production of
23 documents and interrogatories, and the Defendant is hereby required to serve his
24 response within five (5) days of service of the Plaintiff's requests. Additionally,
25 Plaintiff is hereby authorized to conduct the depositions of the Named Defendant, and
26 any corporate representatives of the identified aliases, within two (2) days of receiving
27 the Defendant's responses to the discovery requests. Defendant is hereby ordered to
28

have the appropriate representative(s) appear for deposition at the date and time noticed by Plaintiff.

## VII.  ORDER SETTING PRELIMINARY-INJUNCTION HEARING

Plaintiff's application for an *ex parte* order for Defendant to show cause why a preliminary injunction should not issue is granted as follows:

A. Based upon the Plaintiff's Verified Complaint (Doc. 6) and motion (Doc. 5), the Court finds Plaintiff is entitled to injunctive relief.  Therefore, pursuant to Federal Rule of Civil Procedure 65(b)(3) Defendant is hereby ordered to appear to show cause why an order should not issue granting the injunctive relief requested in Plaintiff's motion (Doc. 5) before the Court in the United States Courthouse located at 401 West Washington Street, Phoenix, Arizona, in Courtroom 503 on Wednesday December 19, 2012, at 1:30 p.m. MST.

B. Further, Defendant shall respond in writing opposing Plaintiff's motion (Doc. 5) and explain why a preliminary-injunction should not issue.  Defendant's Response shall be filed with the Court and served on counsel for Plaintiff within five (5) days after being served with this Order.  Plaintiff shall file a Reply with the Court and serve it on the Defendant within two (2) days of Defendant filing his Response with the Court but not later than Friday December 14, 2012.

C. If Defendant does not respond in writing to Plaintiff's motion (Doc. 5) within five (5) days of being served with this Order or if Defendant fails to appear at the hearing set for Wednesday December 19, 2012, the Court will deem either failure to be Defendant's consent to the motion being granted.  Local Rule Civ. 7.2(i).

D. Service or delivery of copies of this order and the papers in support thereof on Defendant or his attorney at the time of the seizure, or within three (3) days after the seizure if there is no party present at the seizure that is authorized to accept service, shall be given and as so given shall be deemed good and sufficient service thereof.

## VIII.  CONCLUSION

1 Based on the foregoing,

2 **IT IS ORDERED** granting Plaintiff's Emergency *Ex Parte* Application for: (1) temporary restraining order and seizure order; (2) order to show cause why a preliminary injunction should not issue; (3) order restraining assets tied to the counterfeiting operation; (4) substitute custodian order; and (5) order for expedited discovery (Doc. 5).

**IT IS FURTHER ORDERED** Defendant shall file with the Court and serve on counsel for Plaintiff within five (5) days after being served with this Order, a Compliance Report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with this Order.

**IT IS FURTHER ORDERED**, as explained in section IV of this Order, the parties shall appear before the Court on Wednesday December 19, 2012, at 1:30 p.m. MST, in Courtroom 503, for a seizure confirmation hearing pursuant to 15 U.S.C. § 1116(d)(10)(A) unless Plaintiff shows good cause for another date or unless Defendant consents to another date.

**IT IS FINALLY ORDERED**, as explained in section VII of this Order, the parties shall appear before the Court on Wednesday December 19, 2012, at 1:30 p.m. MST, in Courtroom 503, and Defendant shall show cause why a preliminary injunction should not issue.

Dated this 5th day of December, 2012, at 1:30 p.m. MST.

*[signature]*
James A. Teilborg
United States District Judge

Copies to Only: Counsel for Plaintiff