**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Acushnet Company, a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>Thomas Allan Thiede a/k/a Thomas Thiede a/k/a Tom Thiede a/k/a Tom T., an individual, d/b/a Showcase Studios d/b/a Showcase Companies d/b/a Showcase Architectural Products d/b/a Showcase Custom Homes, Inc. d/b/a Makeovermygaragedoor.com; Dualwin Sporting Goods Co., Ltd., an unincorporated foreign business entity; Does 1-5 and Does 7-10,<br><br>Defendants. | No. CV 12-02508-PHX-JAT<br><br>**ORDER GRANTING PLAINTIFF'S *EX* PARTE APPLICATION FOR (1) TEMPORARY RESTRAINING ORDER; (2) ORDER RESTRAINING THE TRANSFER OF ASSETS TIED TO THE COUNTERFEITING OPERATION; AND (3) ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ENTER**<br><br>[FILED UNDER SEAL] |

Pending before the Court is Plaintiff's *Ex Parte* Application for: (1) a temporary restraining order; (2) an order restraining the financial accounts tied to the counterfeiting operation; and (3) an order to show cause why a preliminary injunction should not issue. (Doc. 33).

**I.    BACKGROUND**

A.    Plaintiff Acushnet Company ("Acushnet") is the owner of all rights in and to the following trademarks protected by the following United States Federal Trademark Registrations:

| Trademark | Registration Number | Registration Date | Class(es)/Goods |
|---|---|---|---|
| (crown logo) | 2,620,432 | September 17, 2002 | IC 28- Golf clubs and accessories, namely golf tees, golf gloves, golf bags, golf putters, golf drivers, golf woods, golf irons, golf green repair tools, golf club covers, and golf bag covers. |
| SCOTTY CAMERON | 2,525,024 | January 1, 2002 | IC 28 – Golf clubs and accessories thereof |
| TITLEIST | 934,406 | May, 23, 1972 | IC 28- Golf equipment comprising golf balls, golf clubs, golf bags, golf gloves and golf covers |
| *Titleist* | 1,155,766 | May 26, 1981 | IC 28- Golf Equipment-Namely, Golf Balls, Golf Clubs and Golf Bags. |
| (circle T logo) | 3,376,961 | February 5, 2008 | IC 24 – Golf towels<br><br>IC 25 – Clothing, namely, jackets, shirts, hats and visors<br><br>IC 28 – Golf equipment, namely, golf putters, golf club head covers, golf club grips and divot tools |
| TOUR RAT | 4,189,312 | August 14, 2012 | IC 28 – Golf balls; golf putter covers |

These trademarks are registered in International Class 28 and are used in connection with the manufacture and distribution of, among other things, high quality golf club headcovers. Additionally, Acushnet is the owner of all common law rights in and to the JUNKYARD DOG and SCOTTY'S CUSTOM SHOP marks as associated with clothing, including shirts and golf club headcovers (the above-identified common law and registered marks shall collectively be referred to herein as the "Acushnet Marks").

2

B. Plaintiff sells and otherwise distributes its respective high quality products, including golf club headcovers and clothing products, in the United States, in particular Arizona. Based on Plaintiff's allegations, it appears Defendant has the requisite minimum contacts for personal jurisdiction.

C. Defendant is Dualwin Sporting Goods Co., Ltd. ("Dualwin" or "Defendant")

D. Plaintiff has proffered sufficient evidence to show that Defendant has manufactured, advertised, promoted, offered for sale, and/or distributed, golf club headcovers and clothing products, including shirts, using labeling with counterfeits, reproductions, and/or colorable imitations of the Acushnet Marks.

E. Defendant is not now, nor has it ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Acushnet Marks, or to distribute or sell golf club headcovers and/or clothing products, including shirts, bearing counterfeits and infringing versions of the Acushnet Marks.

## II. ANALYSIS

Pursuant to the Lanham Act (15 U.S.C. § 1051 *et seq.*) as amended by the Trademark Counterfeiting Act of 1984, Public Law 98-473, and Federal Rule of Civil Procedure 65, this Court is authorized to grant Plaintiff's motion. Further, the Court finds Defendant has the requisite minimum contacts within this district for the Court to have the jurisdiction to apply the Lanham Act. *See Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 558-61 (9th Cir. 1992) (Reebok Int'l) (affirming extraterritorial application of the Lanham Act); *Ocean Garden, Inc. v. Marketrade Co. Inc.*, 953 F.2d 500, 503-504 (9th Cir. 1991) (same). Considering 15 U.S.C. § 1116(d)(4)(B) and the factors the Ninth Circuit has established for granting preliminary injunction relief, *see Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009), the Court finds:

A. Plaintiff has a very strong probability of proving at trial that consumers are likely to be confused by Defendant's manufacturing, advertisement, promotion,

sale, offer for sale, and/or distribution of golf club headcovers and clothing products, including shirts, bearing counterfeits, reproductions, and/or colorable imitations of the Acushnet Marks.

B. Plaintiff is likely to suffer an immediate and irreparable injury if a temporary restraining order is not granted. It clearly appears from the following specific facts, as set forth in Plaintiff's Verified Complaint and the sworn Declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendant can be heard in opposition unless Plaintiff's request for *ex parte* relief is granted: (1) Defendant has offered for sale golf club headcovers and clothing products, including shirts, bearing counterfeit and infringing trademarks in violation of Plaintiff's rights; (2) Plaintiff has well-founded fears that more counterfeit and infringing products bearing its trademarks will appear in the marketplace; that consumers may be misled, confused, and disappointed by the quality of these products, resulting in the consequent injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for its genuine products; and (3) Plaintiff has well-founded fears that if it proceeds on notice to Defendant on this Application, Defendant will secret, conceal, destroy, sell off, or otherwise dispose of his counterfeit and infringing goods, software and equipment used to manufacture the counterfeit and infringing goods, packaging, and records relating thereto in his possession and/or inform his suppliers and others of Plaintiff's claims with the result that those suppliers and others may also secret, conceal, sell off, or otherwise dispose of counterfeit or infringing goods, equipment used to manufacture the counterfeit and infringing goods, packaging, and records relating thereto in their possession and control.

C. The balance of potential harm to Defendant if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiff if it is not issued.

D. The public interest favors issuance of the temporary restraining order in order to protect Plaintiff's trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

### III.  TEMPORARY RESTRAINING ORDER

Plaintiff's application for an *ex parte* temporary restraining order is granted as follows:

Defendant, its respective officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any of them are hereby temporarily restrained:

A.   From manufacturing, advertising, promoting, offering to sell, selling, distributing, or transferring any products, product packaging, software, embroidery patterns, or labeling bearing the Acushnet Marks identified in section IA above, or any confusingly similar marks, other than those actually manufactured and distributed by Plaintiff;

B.   From communicating, directly or indirectly, with any person or persons (a) from whom Defendant purchased or obtained products, materials, software or embroidery patterns used to counterfeit and infringe the Acushnet Marks identified in section IA above above; or (b) to whom Defendant sold or offered to sell its finished products; or (c) whom Defendant knows or reasonably believes to possess, control, or have access to any such products, materials, software or embroidery patterns;

C.   From otherwise communicating, directly or indirectly, with any person(s) about this action, or Plaintiff's Application for this Order, except for Defendant's attorneys;

D.   From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (a) any products or product packaging not manufactured or distributed by Plaintiff bearing the Acushnet Marks, or any confusingly similar marks; or (b) any documentary or electronic records or similar evidence, software, embroidery patterns and/or equipment relating to the manufacture, sale, offer for sale, distribution, or transfer of any patterns, products or product packaging bearing any of the Acushnet Marks or colorable imitations thereof.

E. From knowingly instructing, aiding, or abetting any other person or business entity in engaging in any of the activities referred to in paragraphs A through D of this section.

### IV. ORDER RESTRAINING TRANSFER OF ASSETS

In order to preserve the status quo and under the authority granted to this Court by 15 U.S.C. § 1117 to freeze the assets of a defendant under the Lanham Act, *see Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 737 F. Supp. 1521, 1526 (S.D. Cal. 1989); *see also Reebok Int'l*, 970 F.2d at 558-61 (affirming district court's authority to freeze assets granted by the Lanham Act), Plaintiff's application for an *ex parte* order restraining the transfer of assets is granted as follows:

A. Prior to having Defendant's assets frozen, Plaintiff shall serve this Order on PayPal, Inc. ("PayPal") and any related companies and affiliates as described in paragraph D of this section.

B. Upon service of this Order by Plaintiff, PayPal and any related companied and affiliates, shall immediately restrain and limit all accounts controlled and/or used by the Defendant and/or his aliases identified in section I(C) above and/or in the name of Dualwin Sporting Goods Co., Ltd., dualwin@yahoo.cn, and/or xihaianshancheng@126.com.

C. PayPal shall further, within five (5) days of receiving this Order, provide Plaintiff's counsel with all data which identifies the accounts frozen as well as an accounting of the funds in the restrained accounts. Such restraint of the accounts and the disclosure of the related financial institution account information shall be made without prior notice to the account owners or the financial institutions until further order of this Court.

D. Any financial institutions, and any related companies and affiliates, including those identified by PayPal in connection with paragraphs B or C in this section, (the "Financial Institutions"), which hold funds on behalf of or derived from Defendant's business, upon receipt of notice of this Order, shall immediately restrain

6

1  and limit all accounts controlled and/or used by Defendant and/or its aliases identified
2  in section I(C) above and/or in the name of Dualwin Sporting Goods Co., Ltd.,
3  dualwin@yahoo.cn, and/or xihaianshancheng@126.com.

4       E.    The Financial Institutions shall further, within five (5) days of receiving
5  this Order, provide Plaintiff's counsel with all data which identifies the accounts
6  restrained as well as an accounting of the funds in the restrained accounts. Such
7  restraint of the accounts and the disclosure of the related financial institution account
8  information shall be made without prior notice to the account owners or the financial
9  institutions until further order of this Court.

10      F.    Within five (5) days of serving PayPal and any other Financial
11 Institutions under paragraph D of this section, but no later than Wednesday, January 2,
12 2013, Plaintiff shall give notice to the Court identifying all accounts affected by this
13 section and the amount(s) of assets restrained and limited in those accounts.

14      G.    Plaintiff shall maintain its previously posted bond in the amount of
15 $10,000.00 as payment of damages to which Defendant may be entitled for a wrongful
16 injunction or restraint, during the pendency of this action, or until further Order of the
17 Court. In the Court's discretion, the bond may be subject to increase should the amount
18 of the funds seized exceed $10,000.00.

19 **V.  ORDER SETTING PRELIMINARY-INJUNCTION HEARING**

20      Plaintiff's application for an *ex parte* order for Defendant to show cause why a
21 preliminary injunction should not issue is granted as follows:

22      A.    Based upon the Plaintiff's Verified Complaint and motion, the Court finds
23 Plaintiff is entitled to injunctive relief. Therefore, pursuant to Federal Rule of Civil
24 Procedure 65(b)(3) Defendant is hereby ordered to appear to show cause why an order
25 should not issue granting the injunctive relief requested in Plaintiff's motion before the
26
27
28

Court in the United States Courthouse located at 401 West Washington Street, Phoenix, Arizona, in Courtroom 503 on Tuesday, January 8, 2013, at 2 p.m. MST.[1]

B. Further, Defendant shall respond in writing opposing Plaintiff's motion and explain why a preliminary-injunction should not issue. Defendant's Response shall be filed with the Court and served on counsel for Plaintiff within five (5) days after being served with this Order. Plaintiff shall file a Reply with the Court and serve it on the Defendant within two (2) days of Defendant filing his Response with the Court but no later than Wednesday, January 2, 2013.

C. If Defendant does not respond in writing to Plaintiff's motion within five (5) days of being served with this Order or if Defendant fails to appear at the hearing set for Tuesday, January 8, 2013, the Court will deem either failure to be Defendant's consent to the motion being granted. *See* LR Civ 7.2(i).

D. Service or delivery of copies of this order and the papers in support thereof on Defendant to Defendant's known e-mail address, dualwin@yahoo.cn or via postal mail to Defendant's known physical address, No. 22 Ren Min Road, MinHang District, Shanghai, China, shall be given and as so given shall be deemed good and sufficient service thereof.

## VI. CONCLUSION

Based on the foregoing:

**IT IS ORDERED** granting Plaintiff's Emergency *Ex Parte* Motion for (1) a temporary restraining order; (2) an order restraining the financial accounts tied to the counterfeiting operation, and upon expiration of the temporary restraining order, a preliminary injunction; and (3) an order to show cause why a preliminary injunction should not issue (Doc. 33).

**IT IS FURTHER ORDERED** Defendant Dualwin Sporting Goods Co., Ltd.

---

[1] The Court recognizes this date is outside the 14 day window per Federal Rule of Civil Procedure 65(b)(2). However, due to the holiday season this is the first available date before the Court. If Defendant deems this date too far in the future, Defendant may move to be heard sooner under Rule 65(b)(4).

1  shall file with the Court and serve on counsel for Plaintiff within five (5) days after
2  being served with this Order, a Compliance Report in writing and under oath, setting
3  forth in detail the manner and form in which Defendant has complied with this Order.

4        **IT IS FURTHER ORDERED**, as explained in section V of this Order, the
5  Plaintiff and Defendant Dualwin Sporting Goods Co., Ltd. shall appear before the Court
6  on Tuesday, January 8, 2013, at 2 p.m. MST, in Courtroom 503, and Defendant
7  Dualwin Sporting Goods Co., Ltd. shall show cause why a preliminary injunction
8  should not issue.

9        Dated this 20th day of December, 2012

*James A. Teilborg*
United States District Judge

Copies to only: Counsel for Plaintiff

9